CITY ATTORNEY'S OFFICE
CITY AND COUNTY OF SAN FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
JESSE C. SMITH, State Bar #122517
Chief Assistant City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
SARA J. EISENBERG, State Bar #269303
Chief of Strategic Advocacy
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone:    (415) 554-4748
Facsimile:    (415) 554-4715
E-Mail:       matthew.goldberg@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE COUNTY COUNSEL
COUNTY OF SANTA CLARA
JAMES R. WILLIAMS, State Bar #271253
County Counsel
GRETA S. HANSEN, State Bar #251471
Chief Assistant County Counsel
LAURA TRICE, State Bar #284837
Lead Deputy County Counsel
RAPHAEL N. RAJENDRA, State Bar #255096
Deputy County Counsel
JULIA B. SPIEGEL, State Bar #292469
Deputy County Counsel
H. LUKE EDWARDS, State Bar #313756
Deputy County Counsel
70 West Hedding Street
East Wing, Ninth Floor
San Jose, CA 95110-1770
Telephone:    (408) 299-5900
Facsimile:    (408) 292-7240
E-Mail:       luke.edwards@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO and COUNTY OF SANTA CLARA,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF HOMELAND SECURITY; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KEVIN McALEENEN, Acting Secretary of Homeland Security; and KEN CUCCINELLI, in his official capacity as Acting Director of U.S. Citizenship and Immigration Services,<br><br>Defendants. | Case No. 4:19-cv-04717-PJH<br><br>**DECLARATION OF COUNTY OF SANTA CLARA CHIEF OPERATING OFFICER MIGUEL MÁRQUEZ IN SUPPORT OF COUNTIES' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:    October 2, 2019<br>Time:            9:00 am<br>Judge:           Hon. Phyllis J. Hamilton<br>Place:           Oakland Courthouse<br>                 Courtroom 3 - 3rd Floor<br>Trial Date:      Not set |

I, MIGUEL MÁRQUEZ, declare as follows:

1. I am Chief Operating Officer for the County of Santa Clara ("County"). I submit this declaration in support of the City and County of San Francisco and County of Santa Clara's Motion for a Preliminary Injunction. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to the matters set forth herein.

2. I have been the Chief Operating Officer for the County since August 2016. In this capacity, I supervise and oversee the County's operations. I have been privileged to serve in high-level roles at the County and other public entities for nearly twenty years. From 2012 to 2016, I served as an Associate Justice on California's Sixth District Court of Appeal. For three years before my appointment to the Court of Appeal, I served as the County Counsel and Acting County Counsel for the County of Santa Clara. In this capacity, I advised the County's Board of Supervisors, the County's executive management team, and staff throughout the County organization on a broad range of legal issues, including issues involving finance, local governance, and local policy. Before joining the County, I served as counsel to several other public entities, including in governance, finance, and policy matters.

3. I have a deep understanding of the County's policies, structure, operations, and processes. I have been integrally involved in the development and implementation of County policies and budget processes, including those concerning the County's provision of public benefits, health services, and other programs that serve the County's residents, including its immigrant communities.

4. The County has about 1.9 million residents, thirty-eight percent of whom are foreign-born—the highest percentage of any California county. The County has a strong interest in ensuring that all of its residents, including immigrants and their families, have access to health and safety-net services and the support they need to build healthy, thriving communities.

5. The County provides immigrant-focused community services through the Office of Immigrant Relations ("OIR"), which works to understand the needs of immigrant communities in the County, collaborates and supports organizations working to improve the lives of immigrants

in the County, and promotes effective coordination of services to facilitate full inclusion of the County's immigrant communities. As part of these efforts, OIR administers a grant program initiated by the County's Board of Supervisors in 2016 to support nearly twenty community-based organizations (CBOs) operating in the County in providing free and low-cost legal assistance to immigrants and their families, funding approximately $3.5 million in Fiscal Year 2017-2018. For Fiscal Year 2018-2019, the County's total support for immigration-related services amounted to nearly $5.5 million. This is because of separate programming that began a few years prior in which the County began to provide funds to local nonprofits to provide legal services for immigration cases and proceedings involving unaccompanied minors and families with children as well as some other forms of legal assistance.

6. The County also serves as the frontline administrator of a range of safety-net benefits and programs that serve the most vulnerable residents in the County. In addition, the County runs and oversees most public health functions in Santa Clara County, including disease control and prevention and a multi-billion-dollar health and hospital system that serves, among other things, as a provider of last resort, offering care to low-income and vulnerable residents regardless of their ability to pay.

7. A significant number of these programs are either wholly or partially funded by enrollment-based federal programs, such as Medicaid (known in California as Medi-Cal), the Supplemental Nutrition Assistance Program (SNAP, known in California as CalFresh), Supplemental Security Income (SSI), and Temporary Assistance for Needy Families (TANF, known in California as CalWORKS). Large numbers of noncitizens in the County live in families in which at least one person receives these types of benefits. For example, as of July 2019, approximately 72,400 individuals live in families in which at least one person received Medi-Cal. Most of these benefits are provided through programs established by the federal government but which are administered by the County, often along with the State of California.

8. In conjunction with these federal programs, the County provides a wide range of programs supported by local or joint state-local funding. These programs promote resident and community health and well-being and support County residents at nutritional risk, such as infants,

children, and expecting mothers. For the County's local programs to be successful and sustainable, it is critical and often mandatory that residents enroll—and remain enrolled—in federal benefit programs for which they are eligible as a prerequisite for receiving certain services from the County. The County's local programs offer complementary services that supplement and fill gaps in federal benefit programs. Together, these programs enable the County to operate a comprehensive and highly complex health and safety-net system.

9. If County residents were to forego or disenroll from public benefit programs despite continued need for assistance, the County would be forced to devote substantial local resources to meeting these residents' escalating needs as they would not otherwise receive primary care and other critical services available to individuals enrolled in benefit programs. This, in turn, would divert needed County resources and threaten the viability of important locally funded County programs. The County would need to immediately consider funding reallocations, program restructuring, and new expenditures to address continuing—and growing—community needs. Disenrollment from Medicaid and SNAP alone would require County agencies and departments to both reallocate funds and seek significant amounts of additional funds to protect public health and address community health care needs.

10. I am familiar with the Department of Homeland Security's (DHS) rulemaking regarding Inadmissibility on Public Charge Grounds. Because this rulemaking is of great concern to the County's immigrant communities, OIR has tracked it closely and has been required to expend substantial resources engaging with the community regarding the proposed and final rules. Since DHS announced its proposed public charge rule in October 2018, five full-time OIR staff have spent more than 700 hours engaging in outreach and education with CBOs and immigrant communities about their public charge-related concerns and fears, and fielding questions from community members about the impact of the proposed and final rule. Since DHS submitted the public charge rule for publication in the Federal Register on August 12, 2019, OIR already has had to expend scores of hours digesting the rule, creating literature to inform the community about the rule, meeting with community groups, and exploring means of obtaining additional County funding for public charge-related direct legal services, given the rapidly

increasing need for residents to find free or low-cost immigration and public benefit legal services. OIR expects to commit even greater amounts of staff time in the coming months to engage in community outreach, provide trainings, and offer other programming related to the public charge rule.

11. Many other County agencies and departments will also incur significant administrative costs to mitigate the upheaval caused by the public charge rule. These costs include answering questions about the public charge rule, processing public benefit disenrollment requests, assessing programmatic impacts, reviewing and potentially altering policies and procedures, receiving and providing trainings, and conducting community outreach. Although a significant investment of resources, these programmatic responses are essential to mitigating the serious fiscal and public health harms caused by the public charge rule and to ensuring that the overall health and well-being of our residents and communities is not harmed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 28, 2019 in San José, California.

Respectfully submitted,

MIGUEL MÁRQUEZ