BARBARA J. PARKER, SBN 069722
Oakland City Attorney
MARIA BEE, SBN 167716
ERIN BERNSTEIN, SBN 231539
MALIA MCPHERSON, SBN 313918
CAROLINE WILSON, SBN 322389
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Email: cwilson@oaklandcityattorney.org

Attorneys for Amicus Curiae
CITY OF OAKLAND, CA

MICHAEL N. FEUER, SBN 111529
Los Angeles City Attorney
JAMES P. CLARK, SBN 64780
KATHLEEN A. KENEALY, SBN 212289
DANIELLE L. GOLDSTEIN, SBN 257486
Office of the Los Angeles City Attorney
200 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1868
Email: danielle.goldstein@lacity.org

Attorneys for Amicus Curiae
CITY OF LOS ANGELES, CA

VINCE RYAN
Harris County Attorney
ROBERT HAZELTINE-SHEDD
1019 Congress
Houston, Texas 77002
Telephone: (713) 274-5101
Email: vince.ryan@cao.hctx.net

Attorneys for Amicus Curiae
HARRIS COUNTY, TX

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

CITY AND COUNTY OF SAN FRANCISCO and COUNTY OF SANTA CLARA

Plaintiffs,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES; DEPARTMENT OF HOMELAND SECURITY; KEVIN McALEENEN, Acting Secretary of Homeland Security; and KENNETH T. CUCCINELLI, in his official capacity as Acting Director of U.S. Citizenship and Immigration Services,

Defendants.

Case No. 4:19-cv-04717-PJH

**[PROPOSED] BRIEF OF *AMICI CURIAE* 29 COUNTIES, CITIES, AND LOCAL GOVERNMENT AGENCIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date: October 2, 2019
Time: 9:00 a.m.
Location: Oakland Courthouse
Courtroom 3 – 3rd Floor

The Honorable Judge Phyllis J. Hamilton

# TABLE OF CONTENTS


INTERESTS OF AMICI AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

I. The Rule Will Cause Families to Forgo Crucial Benefits for Fear of Denial of Legal Status and Separation. .......... 2

II. The Rule Will Irreparably Harm Local Governments by Reducing Vital Housing, Health Care and Nutrition Supports. .......... 6

A. The Rule Will Profoundly Diminish Public Health—and Local Governments Will Be Forced Compensate. .......... 7

B. The Rule Will Increase Homelessness and Exacerbate Existing Housing Crises. .......... 9

C. By Punishing Individuals Who Receive Food Assistance, the Rule Multiplies the Harm to Local Governments. .......... 11

D. The Rule Will Undermine Family Cohesion and Amici's Foster Care Systems. .......... 13

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

### Cases

*Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719 (1985) ..... 1

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance. Co.*, 463 U.S. 29 (1983) ..... 6

### Statutes

Cal. Health & Saf. Code § 101450 ..... 8

Cal. Health & Saf. Code § 101460 ..... 8

Cal. Health & Saf. Code § 101470 ..... 8

Cal. Welf. & Inst. Code § 16000 ..... 13

Cal. Welf. & Inst. Code § 17000 ..... 8

Tex. Fam. Code § 263.307 ..... 13

Tex. Fam. Code § 264.151 ..... 13

### Rules

Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) (to be codified at 8 C.F.R. pts. 103, 212-14, 245, & 248) ..... *passim*

### Other Authorities

Am. C. of Emergency Physicians, *The Uninsured: Access to Medical Care Fact Sheet* (2016), https://perma.cc/FKV6-44YW ..... 8

John Baackes, L.A. Care Health Plan, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 10, 2018), USCIS-2010-0012-36667 ..... 3

Maria D. Badillo, Children's Rights Project at Public Counsel, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 10, 2018), Docket No. USCIS-2010-0012-55481 ..... 13

Hamutal Bernstein et al., Urban Inst., *Safety Net Access in the Context of the Public Charge Rule* (Aug. 2019), https://perma.cc/PY62-4PLG ..... 4, 7, 12

Helen Branswell, *Federal Rules Threaten to Discourage Undocumented Immigrants from Vaccinating Children*, STAT News (Aug. 26, 2019), https://perma.cc/KW5N-W5E8 ..... 5, 9

Cal. Pol'y Lab, *Strengthening the Social Safety Net and Health Equity*, https://perma.cc/HSF3-TSNT ..... 7

Diego Cartagena, Bet Tzedek Legal Services, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 9, 2018), Docket No. USCIS-2010-0012-52651 ..... 5, 9

Ctr. on Budget & Pol'y Priorities, *Policy Basics: The Supplemental Nutrition Assistance Program (SNAP)*, (June 25, 2019), https://perma.cc/RY3N-GUJY ..... 11

Ctrs. for Disease Control & Prevention, *Health and Academic Achievement* (May 2014), https://perma.cc/3VXF-Y9LC ..... 8

**TABLE OF AUTHORITIES—Continued**


Chicago, IL Mayor Rahm Emanuel, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 10, 2018), Docket No. USCIS-2010-0012-50648 ...................... 4

City of Oakland, *Fiscal Year 2017-19 Adopted Policy Budget* (Oct. 2017), https://perma.cc/FQ6M-KFKF ........................................................................................ 13

East Bay Community Law Center, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 10, 2018), Docket No. USCIS-2010-0012-52784 ...................... 4

Will Fischer, *Chart Book: Rental Assistance Reduces Hardship, Promotes Children's Long-Term Success*, Ctr. on Budget & Pol'y Priorities (July 5, 2016), https://perma.cc/S2GA-G5HC ......................................................................................... 11

Will Fischer, *Research Shows Housing Vouchers Reduce Hardship and Provide Platform for Long-Term Gains Among Children*, Ctr. on Budget & Pol'y Priorities (Oct. 7, 2015), https://perma.cc/8BVZ-JC3D ...................................................................................... 8, 11

Paul Fleming & William Lopez, *Researchers: We're Already Seeing the Effects of Trump's Green Card Rule*, Detroit Free Press (Aug. 24, 2019), https://perma.cc/UD7E-2CK4 ............... 8

Anna Gorman, *Medieval Diseases Are Infecting California's Homeless*, Atlantic (Mar. 8, 2019), https://perma.cc/BFT9-YVNW......................................................... 11

Gale Holland, *L.A. Spent $619 Million on Homelessness Last Year. Has it Made a Difference?*, L.A. Times (May 11, 2019), https://perma.cc/2DMB-W6BJ .................................................... 10

Joint Ctr. for Hous. Studies of Harvard Univ., *The State of the Nation's Housing 2017* ................ 9

Joint Ctr. for Hous. Studies of Harvard Univ., *The State of the Nation's Housing 2019* .......... 9, 10

Charles N. Kahn III, Federation of American Hospitals, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at attachment (Dec. 10, 2018), Docket No. USCIS-2010-0012-44367 ...................................................................................... 9

Kaiser Family Found., *Changes to "Public Charge" Inadmissibility Rule: Implications for Health and Health Coverage* (Aug. 12, 2019), https://perma.cc/A2LD-23SG ........................... 4

Jennifer Laird et al., *Forgoing Food Assistance out of Fear: Simulating the Child Poverty of a Making SNAP a Legal Liability for Immigrants*, 5 Socius 1 (2019), https://perma.cc/QT7U-6VV3............................................................................ 4, 11, 12

Los Angeles Homeless Servs. Auth., *2019 Greater Los Angeles Homeless Count Presentation* (Aug. 5, 2019)................................................................................................. 10

George V. Masi, Harris Health System, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 3, 2018), Docket No. USCIS-2010-0012-33297 .................... 3, 9

J. Mac McCullough, Academy Health, *The Return on Investment of Public Health System Spending* (2018), https://perma.cc/AD7H-9L4V ............................................................ 7

Leila Miller, *Trump Administration's 'Public Charge' Rule Has Chilling Effect on Benefits of Immigrants' Children*, L.A. Times (Sept. 3, 2019), https://perma.cc/FC5C-YCG4.................... 5

Minneapolis, MN Mayor Jacob Frey, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 7, 2018), Docket No. USCIS-2010-0012-29261 ........................ 5

Nat'l Low Income Hous. Coal., *Out of Reach 2019: Maryland* (2019), https://perma.cc/7WX8-DQTV ......................................................................................... 10

New York City, Chicago, the U.S. Conference of Mayors, & Signatories, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 10, 2018), Docket No. USCIS-2010-0012-62861 ..................................................................................... 12

**TABLE OF AUTHORITIES—Continued**

Steven Nish, Los Angeles Best Babies Network, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 9, 2018), Docket No. USCIS-2010-0012-42481 .......... 5

Ryan Nunn et al., Brookings Inst., Hamilton Project, *A Dozen Facts about Immigration* (Oct. 2018), https://perma.cc/DK6F-TTQL .......... 3

Sharon Parrott, Ctr. on Budget & Pol'y Priorities, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 7, 2018), Docket No. USCIS-2010-0012-37272 .......... 6

Cristobal Ramón & Tim O'Shea, Bipartisan Pol'y Ctr., *Immigrants and Public Benefits: What Does the Research Say?* (Nov. 2018), https://perma.cc/8BC8-6PE .......... 3, 6

Caroline Ratcliffe & Signe-Mary McKernan, Urban Inst., *How Much Does SNAP Reduce Food Insecurity?* (Apr. 2010), https://perma.cc/PWB9-V5ZZ .......... 12

Claudia Schlosberg & Dinah Wiley, *The Impact of INS Public Charge Determinations on Immigrant Access to Health Care*, Mont. Pro Bono (May 22, 1998), https://perma.cc/WX9P-PNDB .......... 9

Valerie Strauss, *Six Ways Trump's New 'Public Benefits' Immigration Policies Could Hurt Children and Schools*, Wash. Post (Aug. 23, 2019), https://perma.cc/URJ9-S6TC?type=image .......... 5

Danilo Trisi, *Trump Administration's Overbroad Public Charge Definition Could Deny Those Without Substantial Means a Chance to Come to or Stay in the U.S.*, Ctr. on Budget & Pol'y Priorities (May 30, 2019), https://perma.cc/Q2LB-95NV .......... 10

U.S. Dep't of Health & Human Servs., Children's Bureau, *Determining the Best Interests of the Child* (2016), https://perma.cc/Y2NE-B5QC .......... 13

U.S. Dept't of Agriculture, *SNAP Data Tables* (last updated Aug. 2, 2019), https://perma.cc/9WRC-GSE5 .......... 12

## INTERESTS OF AMICI AND SUMMARY OF ARGUMENT

The Cities of Los Angeles and Oakland, California together with Harris County, Texas and 26 cities, counties, and local government agencies from nearly every region of the nation ("Amici"), submit this brief in support of the City and County of San Francisco and County of Santa Clara's motion for a nationwide preliminary injunction.[1] Collectively, Amici represent more than 27 million people, including millions of residents who are immigrants or the children of immigrants. If it is allowed to take effect, the Final Rule on the public charge ground of inadmissibility[2] (the "Rule") challenged in this action will work profound and irreparable harm on Amici's communities—and on Amici themselves.

Amici, like their counterparts across the country, have primary responsibility for promoting and protecting the health and welfare of their communities. *See, e.g.*, *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 719 (1985) (residents' health and safety are "primarily, and historically, matters of local concern"). From housing to hospitals, Amici operate and fund many of the basic governmental functions and services that sustain the health and welfare of American neighborhoods. As local governments and agencies, Amici manage regional safety-net hospitals and clinics, immunization and infectious disease prevention programs, and emergency services. Amici also provide housing support to blunt the impact of the nation's accelerating housing crisis, food assistance to provide a boost to needy families, and family support and foster care services to promote family cohesion and protect children in their communities. As a result, Amici are the primary backstop against the

[1] Amici are: the City of Los Angeles, California; the City of Oakland, California; the County of Harris, Texas; and the Cities of Albuquerque, New Mexico; Austin, Texas; Baltimore, Maryland; Chicago, Illinois; Dallas, Texas; Detroit, Michigan; Holyoke, Massachusetts; Houston, Texas; Minneapolis, Minnesota; Philadelphia, Pennsylvania; Sacramento, California; Santa Fe, New Mexico; Santa Monica, California; Seattle, Washington; Somerville, Massachusetts; South Bend, Indiana; Stockton, California; and West Hollywood, California; the City and County of Denver, Colorado; the Counties of Marin, Monterey, San Mateo, and Santa Cruz, California; the County of King, Washington; the County of Travis, Texas; and the Housing Authority of the City of Los Angeles, California. No part of this brief was authored by either party's counsel, neither party or their counsel contributed money that was intended to fund preparing or submitting the brief, and no person—other than the amici and their counsel—contributed money that was intended to fund preparing or submitting the brief.

[2] Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019) (to be codified at 8 C.F.R. pts. 103, 212-14, 245, & 248).

interconnected needs of communities in the United States.

Many of the residents that call Amici's jurisdictions home are immigrants and the children of immigrants. These residents are integral threads in the social and economic fabric of Amici's jurisdictions and the various communities within them which are composed of both immigrants and native-born individuals. The well-being of Amici's immigrant residents is critical both on its own terms and to the health of cities and counties as a whole—when they suffer, Amici suffer. Accordingly, many of Amici's services are designed to support residents regardless of immigration status. But while the Department of Homeland Security (DHS) concedes that the Final Rule will cause significant harm to these individuals and their communities,[3] it has failed to meaningfully consider or address the corresponding harm to local governments that arises when residents forgo crucial health, nutrition, and housing services.

The Rule targets services that are provided precisely because they are the bedrock of a healthy community and assist vulnerable individuals in attaining and maintaining self-sufficiency. The Rule will cause—and is already causing—residents to forgo these services. With these withdrawals, Amici will suffer the same direct harms that San Francisco and Santa Clara describe in the motion for a preliminary injunction. Needs once served by federally funded programs will fall to Amici, at high cost to other important services Amici provide. And apart from the direct burden of filling these gaps, the Rule will make communities as a whole sicker, poorer, and less prosperous, compounding the burden to Amici.

## ARGUMENT

### I. THE RULE WILL CAUSE FAMILIES TO FORGO CRUCIAL BENEFITS FOR FEAR OF DENIAL OF LEGAL STATUS AND SEPARATION.

The Rule is designed to force immigrants to choose between accessing basic governmental support and the ability to attain legal status.[4] Access to health care, housing support, or food assistance can mean a better life for an immigrant's family, including for U.S.

[3] *Id.* at 41,312-14.

[4] *See, e.g.*, *id.* at 41,312-13 ("DHS acknowledges that individuals subject to this rule may decline to enroll in, or may choose to disenroll from, public benefits for which they may be eligible . . . in order to avoid negative consequences as a result of this final rule.")

citizen children. In general, immigrants increase economic output and have a more positive fiscal impact on the nation than native-born Americans.[5] To the extent that they do use public benefits, that use decreases over time.[6] But in the short term, as they become settled in the United States, some immigrants and their children benefit from receiving some incremental support on the way to self-sufficiency.[7] Under the Rule, accepting support can mean loss or denial of legal status, which robs Amici's jurisdictions of immigrants' contributions—and can even result in family members being separated from one another.

Unsurprisingly, since the Administration announced this policy change, Amici's immigrant community members and their families are already making alarming trade-offs to ensure that they remain together. The comments and data submitted to DHS and Amici's own experience suggest that the "chilling effect" of the Rule in Amici's jurisdictions will be immediate and severe—and extend to programs and individuals that are not strictly covered by the Rule in its final form.[8]

For example, from the Los Angeles Care Health Plan (LA Care), the nation's largest public health plan, to Harris County Hospital District, the Harris County Public Hospital System, Amici's partners report calls from members requesting information on how to disenroll from health care programs as well as actual disenrollement.[9] LA Care anticipates that as many as 2.4 million individuals in Los Angeles County alone may withdraw from public health care.[10] The Chicago Department of Public Health previously reported a 6% decrease of patients with

[5] Ryan Nunn et al., Brookings Inst., Hamilton Project, *A Dozen Facts about Immigration* 13 (Oct. 2018), https://perma.cc/DK6F-TTQL.

[6] Cristobal Ramón & Tim O'Shea, Bipartisan Pol'y Ctr., *Immigrants and Public Benefits: What Does the Research Say?* 7 (Nov. 2018), https://perma.cc/8BC8-6PEG.

[7] *Id.*

[8] While the comments and studies have necessarily been submitted and conducted, respectively, before the Rule becomes effective, they highlight the predictable effects of the formal policy change. If anything, the significant chilling effects from mere rumors and proposed changes will only be more severe in response to the Rule going into effect.

[9] John Baackes, L.A. Care Health Plan, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 2 (Dec. 10, 2018), USCIS-2010-0012-36667; George V. Masi, Harris Health System, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 2 (Dec. 3, 2018), Docket No. USCIS-2010-0012-33297.

[10] Baackes, *supra* note 9, at 2.

Medicaid at its immunization clinics, corresponding to an increase in patients who are uninsured.[11] Nationwide, approximately 13.5 million enrollees in Medicaid and CHIP, including 7.6 million children, live with a noncitizen or are noncitizens themselves—all of whom may forgo access to life-saving health care as a result of the Rule.[12]

In addition to health care, many immigrants and their families are likely to disenroll—or have already disenrolled—from food assistance programs like SNAP. A recent study suggests that up to 2.7 million U.S. citizen children could lose SNAP access as a result of the policy change.[13] This research mirrors a recent study published by the Urban Institute featuring interviews with 25 immigrant families who reported that they or a family member avoided participating in noncash benefits in 2018 for fear of risking future green card status—SNAP and Medicaid were the services that they most commonly avoided.[14] Community partners in Oakland have unsurprisingly noticed that immigrant parents are afraid to access benefits like CalFresh for their U.S. citizen children.[15]

What is more, the impact of the Rule will extend far beyond those individuals and services that its final version expressly targets.[16] Since the Rule was published, immigrant service providers have reported that it has "felt like a monumental task" to "convinc[e] parents they don't

[11] Chicago, IL Mayor Rahm Emanuel, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 10 (Dec. 10, 2018), Docket No. USCIS-2010-0012-50648.

[12] Kaiser Family Found., *Changes to "Public Charge" Inadmissibility Rule: Implications for Health and Health Coverage* (Aug. 12, 2019), https://perma.cc/A2LD-23SG.

[13] Jennifer Laird et al., *Forgoing Food Assistance out of Fear: Simulating the Child Poverty of a Making SNAP a Legal Liability for Immigrants*, 5 Socius 1, 5 (2019), https://perma.cc/QT7U-6VV3.

[14] *See* Hamutal Bernstein et al., Urban Inst., *Safety Net Access in the Context of the Public Charge Rule* 1-2 (Aug. 2019), https://perma.cc/PY62-4PLG.

[15] East Bay Community Law Center, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 8-9 (Dec. 10, 2018), Docket No. USCIS-2010-0012-52784.

[16] *See, e.g.*, Inadmissibility on Public Charge Grounds, 84 Fed. Reg. at 41,313 ("DHS appreciates the potential effects of confusion regarding the rule's scope and effect, as well as the potential nexus between public benefit enrollment reduction and food insecurity, housing scarcity, public health and vaccinations, education health-based services, reimbursement to health providers, and increased costs to states and localities.").

have to opt out of benefits for their children."[17] Amici have also seen multiple reports of residents declining to access other important services that are not covered under the Rule, including prenatal services and benefits for young children. The Seattle and King County Health Department reports that parents are refusing infant child services and disenrolling children from preventive health care benefits for which they are eligible.[18] Staff in the City of Minneapolis's Lead Program have noticed an increased reluctance to have children tested for blood lead levels at community events.[19] The Los Angeles Best Babies Network, which provides health care and social support to pregnant women and families with newborns, reports that the proposed rule caused pregnant women to refuse to enroll in their programs for fear of jeopardizing their legal residency.[20] Likewise, community partners have reported declines in housing-related services paid for entirely by the County of Los Angeles, as well as parents withdrawing from hot meal programs for their children.[21]

The Rule will also reduce enrollment in programs such as school meal programs, in part because of administrative realities. Current policy automatically enrolls students whose families receive SNAP benefits in the federal free and reduced-price school meal program.[22] Thus, even though school breakfast and lunch programs are not covered by the Rule, children in immigrant families who avoid SNAP are less likely to receive school meal programs as well.[23]

In its response to these concerns, which were expressed in the Notice of Proposed

---

[17] Leila Miller, *Trump Administration's 'Public Charge' Rule Has Chilling Effect on Benefits of Immigrants' Children*, L.A. Times (Sept. 3, 2019), https://perma.cc/FC5C-YCG4.

[18] Helen Branswell, *Federal Rules Threaten to Discourage Undocumented Immigrants from Vaccinating Children*, STAT News (Aug. 26, 2019), https://perma.cc/KW5N-W5E8.

[19] Minneapolis, MN Mayor Jacob Frey, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 3 (Dec. 7, 2018), Docket No. USCIS-2010-0012-29261.

[20] Steven Nish, Los Angeles Best Babies Network, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* (Dec. 9, 2018), Docket No. USCIS-2010-0012-42481.

[21] Diego Cartagena, Bet Tzedek Legal Services, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 3-4 (Dec. 9, 2018), Docket No. USCIS-2010-0012-52651.

[22] Valerie Strauss, *Six Ways Trump's New 'Public Benefits' Immigration Policies Could Hurt Children and Schools*, Wash. Post (Aug. 23, 2019), https://perma.cc/URJ9-S6TC?type=image.

[23] *Id.*

Rulemaking, DHS turns its back to reality, dismissing individuals' decisions to forgo benefits as "unwarranted," and declining to "alter [the] rule to account for such unwarranted choices."[24] In other words, DHS dismisses the irremediable, severe harm to communities, *see infra* Section II, based on the notion that a layperson—who may be an English-language learner—can confidently follow and understand the myriad complexities of a rule that, by DHS's own estimate, would take 16-20 hours to read and has changed significantly from the initial, widely-reported proposal.[25] Against the backdrop of anti-immigrant rhetoric and policies, some of which retroactively threaten immigrants who have taken advantage of government benefits,[26] DHS's approach flatly ignores the real-world consequences of its rulemaking,[27] and is therefore arbitrary and capricious. *See, e.g.*, *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'").

## II. THE RULE WILL IRREPARABLY HARM LOCAL GOVERNMENTS BY REDUCING VITAL HOUSING, HEALTH CARE AND NUTRITION SUPPORTS.

Contrary to DHS's claims, the public benefits at issue in this Rule empower individuals and strengthen communities. They enable low-income individuals to attain and maintain self-

---

[24] *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. at 41,313.

[25] *Id.* at 41,301. For instance, while under the Proposed Rule DHS would have considered receipt of Medicaid by children under age 21 and pregnant women as part of the public charge determination, under the Final Rule they have been exempted. *Id.* at 41,297. Pregnant women's exemption—while positive—exemplifies the confusing particularity of the Rule. A woman seeking legal permanent resident status would not be able to receive Medicaid and avoid jeopardizing her application. If she were to become pregnant, she could enroll without inviting a public charge determination (if she were not too afraid of future changes to policy), but have to withdraw no later than 60 days after her pregnancy ended. This is complex to describe let alone for a pregnant woman or new mother who may be an English-language learner to navigate.

[26] *See, e.g.*, Sharon Parrott, Ctr. on Budget & Pol'y Priorities, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 94-96 (Dec. 7, 2018), Docket No. USCIS-2010-0012-37272.

[27] *See* Ramón & O'Shea, *supra* note 6, at 10 (collecting research showing that rule complexity and lack of language ability lead to reduction in use of public services).

sufficiency,[28] provide a strong multiplier for economic growth,[29] and increase access to health care.[30] Low-wage workers often need a small boost to achieve self-sufficiency—in many communities where even full-time minimum wage jobs cannot support a family's basic needs, public benefits are the lifeline to stable housing, economic resiliency, and ultimate self-sufficiency.

Conversely, reductions in public benefit availability inflict harms not only on the individuals who rely on them, but on the communities that benefit from their contributions and the local governments charged with their care. Many individuals will avoid benefits because they do not want to jeopardize their immigration status, but their needs will remain the same. The Rule effectively forces local governments to step in and redirect their own resources to support this population in a less efficient and robust manner. If it is allowed to go into effect, the Rule will charge Amici with filling the gaps and remedying the cumulative effects created by immigrant public benefit withdrawal, including in the housing, medical, and nutrition realms.

### A. The Rule Will Profoundly Diminish Public Health—and Local Governments Will Be Forced Compensate.

As detailed in the Plaintiffs' Complaint and motion in this matter, if the Rule takes effect, local governments will pay a heavy price to avoid significant degradation in public health. Amici will also feel the injuries described in Plaintiffs' summary of the potential harms and their effect on local governments. Those effects are not unique to Plaintiffs; they will be felt by local governments across the nation. In all of Amici's communities, the Rule will deter immigrants from accessing medical care to which they are entitled and that keeps them and their communities healthy and vibrant. The effect on the health of the entire community, and the costs associated with addressing these effects, will be high—and will come at the cost of other local priorities.

---

[28] *See, e.g.*, Cal. Pol'y Lab, *Strengthening the Social Safety Net and Health Equity*, https://perma.cc/HSF3-TSNT.

[29] For instance, one set of studies found "every $1 invested in public health in California resulted in $67 to $88 of benefits to society." J. Mac McCullough, Academy Health, *The Return on Investment of Public Health System Spending* (2018), https://perma.cc/AD7H-9L4V.

[30] Bernstein et al., *supra* note 14, at 17.

Federally funded health insurance programs, and other public health services, support immigrants' health and enable them to be more self-sufficient and contribute to healthier communities. For many low-income immigrants, public benefits like health care simply help them remain at their jobs. Benefits are even more important for children. Children who cannot access preventative health care, proper nutrition, or stable housing are more likely to develop health conditions and face difficulties in school, curtailing lifetime earning potential along with basic quality of life.[31]

The effects of this rule will reverberate throughout our communities by increasing health care costs and reducing public health overall. Local governments, as the level of government primarily charged with providing basic services for our most vulnerable residents, will bear the brunt of addressing these effects. When individuals avoid preventative care, they are generally less healthy,[32] and rely more upon emergency care provided through Amici's safety-net hospitals[33] or emergency medical services, which can drive up costs for all residents.[34] Individuals who are afraid to access healthcare services also open themselves and their communities up to increased numbers and severity of disease outbreaks, which must be addressed by local public health departments.[35]

---

[31] *See* Ctrs. for Disease Control & Prevention, *Health and Academic Achievement* 2-3 (May 2014), https://perma.cc/3VXF-Y9LC; Will Fischer, *Research Shows Housing Vouchers Reduce Hardship and Provide Platform for Long-Term Gains Among Children*, Ctr. on Budget & Pol'y Priorities (Oct. 7, 2015), https://perma.cc/8BVZ-JC3D.

[32] *See, e.g.*, Paul Fleming & William Lopez, *Researchers: We're Already Seeing the Effects of Trump's Green Card Rule*, Detroit Free Press (Aug. 24, 2019), https://perma.cc/UD7E-2CK4.

[33] In California, for example, state law requires counties to serve as the healthcare provider of last resort for their residents. Cal. Welf. & Inst. Code § 17000.

[34] *See, e.g.*, Am. C. of Emergency Physicians, *The Uninsured: Access to Medical Care Fact Sheet* (2016), https://perma.cc/FKV6-44YW ("Emergency care is the safety net of the nation's healthcare system, caring for everyone, regardless of ability to pay. . . . Emergency physicians provide the most uncompensated care for uninsured and underinsured patients of all physicians.").

[35] For example, California obligates cities to "take measures necessary to preserve and protect the public health." Cal. Health & Saf. Code § 101450; *see also* Cal. Health & Saf. Code §§ 101460, 101470.

To offer just one example, when individuals forgo vaccination, "herd immunity" is threatened.[36] This is not a speculative harm; in the 1990s, the then-largest rubella outbreak in the nation was associated with a substantial increase in public charge determinations based on Medicaid use. The disease spread as fear grew and immigrant communities withdrew from public health services for fear of immigration consequences.[37] Community organizations have raised an even more alarming possibility in connection with HIV. Disruptions in HIV treatment can lead to drug-resistant strains of the disease. The Rule is likely to produce just these sorts of disruptions as immigrants living with HIV withdraw from medical support.[38] These effects could come at exactly the time the Rule has rendered Amici least able to respond: As the Harris County public health system pointed out in its comment on the Rule, its implementation will cause severely overburdened public hospitals and overcrowding at private and public hospital emergency rooms.[39]

When individuals lose access to health insurance and preventive care, localities' emergency medical and public health services must shoulder the increased burden. Thus, the Final Rule will impose direct and indirect costs on Amici as they seek to care for their frightened and increasingly unhealthy populations.

**B. The Rule Will Increase Homelessness and Exacerbate Existing Housing Crises.**

The Rule will significantly contribute to the housing and homelessness crisis afflicting Amici's communities. Housing and homelessness are already the leading issues for many Amici, in part because the burden of the housing crisis already falls disproportionately to local governments.[40] This burden will surge if the Rule becomes effective—devastating local

---

[36] Branswell, *supra* note 18.

[37] Claudia Schlosberg & Dinah Wiley, *The Impact of INS Public Charge Determinations on Immigrant Access to Health Care*, Mont. Pro Bono (May 22, 1998), https://perma.cc/WX9P-PNDB.

[38] Cartagena, *supra* note 21, at 12.

[39] Masi, *supra* note 9, at 2; *see also* Charles N. Kahn III, Federation of American Hospitals, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at attachment 4-5 (Dec. 10, 2018), Docket No. USCIS-2010-0012-44367.

[40] Joint Ctr. for Hous. Studies of Harvard Univ., *The State of the Nation's Housing 2017* 35; Joint Ctr. for Hous. Studies of Harvard Univ., *The State of the Nation's Housing 2019* 35-36

governments that already devote a large share of local resources to addressing housing and homelessness. In Los Angeles last year alone, the City passed a $1.2 billion bond to build housing for the homeless and spent at least $619 million addressing homelessness.[41] Other jurisdictions have also been forced to take similar measures.

First, by threatening the medical, nutrition, and other public benefits that provide the incremental boost that working families need to achieve self-sufficiency, the Rule threatens low-income residents' tenuous grasp on housing. In the current U.S. labor market, many workers have no choice but to combine their earnings with some form of government assistance—however minor—to make ends meet.[42] Nationwide, more than 80 percent of low-income households spend more than 30 percent of their income on housing.[43] In Los Angeles County, one-third of households spend more than 50 percent of their household income on rent.[44] In Maryland, residents working at minimum wage must work 91 hours each week to afford a one-bedroom rental home.[45] As a result, although many working families rely on public benefits to ease painful trade-offs between housing, food, and medical care, they live on the edge of homelessness.[46] By pushing families to forgo supports on which they rely, the Rule threatens to push them into homelessness, and further from self-sufficiency.

Second, the dramatic expansion of "public charge" to include Section 8 Housing Choice Vouchers, Section 8 Project-Based Rental Assistance, and Public Housing programs will compound this effect. Millions of working low-income households currently receive federal

---

[hereinafter *The State of the Nation's Housing 2019*].

[41] Gale Holland, *L.A. Spent $619 Million on Homelessness Last Year. Has it Made a Difference?*, L.A. Times (May 11, 2019), https://perma.cc/2DMB-W6BJ.

[42] *See* Danilo Trisi, *Trump Administration's Overbroad Public Charge Definition Could Deny Those Without Substantial Means a Chance to Come to or Stay in the U.S.*, Ctr. on Budget & Pol'y Priorities (May 30, 2019), https://perma.cc/Q2LB-95NV.

[43] *The State of the Nation's Housing 2019*, supra note 40, at 4.

[44] Los Angeles Homeless Servs. Auth., *2019 Greater Los Angeles Homeless Count Presentation* 8 (Aug. 5, 2019).

[45] Nat'l Low Income Hous. Coal., *Out of Reach 2019: Maryland* (2019), https://perma.cc/7WX8-DQTV.

[46] *The State of the Nation's Housing 2019*, supra note 40, at 32-33.

rental assistance.[47] For low-income families with children, this assistance is particularly beneficial—one study found that vouchers reduce the share of families that lived in shelters or on the streets by three-fourths.[48] With DHS's expansion of public charge's scope, immigrants who are eligible for and need housing subsidies will be forced to choose between securing housing or seeking legal status. Ultimately, many of the direct and indirect effects of homelessness will be borne by local governments. Apart from the significant burden of housing newly homeless residents, unstable housing situations can lead to a wide range of health-related problems including increased hospital visits, loss of employment, and mental health problems.[49] Homelessness is also associated with extraordinary public health issues; some jurisdictions have seen outbreaks of diseases like Typhus and Hepatitis A associated with increases in homelessness.[50] Local governments are charged with addressing all of these issues, and will be forced to do so using ever-more-stretched local resources.

**C. By Punishing Individuals Who Receive Food Assistance, the Rule Multiplies the Harm to Local Governments.**

Local governments have a direct interest in their residents' continued utilization of food assistance to promote healthy communities. As with housing and medical care, when residents lose these supports, local governments are charged with filling the gaps.

For example, SNAP, which is expressly targeted by the Rule, "is one of the largest federal safety net programs in the country"[51] and "the nation's most important anti-hunger program."[52] SNAP provides important nutritional assistance for participants, most of whom are families with children, households with seniors, or people with disabilities.[53] In June 2018, a typical month,

---

[47] Will Fischer, *Chart Book: Rental Assistance Reduces Hardship, Promotes Children's Long-Term Success*, Ctr. on Budget & Pol'y Priorities (July 5, 2016), https://perma.cc/S2GA-G5HC.

[48] *Id.*

[49] *See* Fischer, *supra* note 31.

[50] Anna Gorman, *Medieval Diseases Are Infecting California's Homeless*, Atlantic (Mar. 8, 2019), https://perma.cc/BFT9-YVNW.

[51] Laird, *supra* note 13, at 2.

[52] Ctr. on Budget & Pol'y Priorities, *Policy Basics: The Supplemental Nutrition Assistance Program (SNAP)*, (June 25, 2019), https://perma.cc/RY3N-GUJY.

[53] *Id.*

39.7 million individuals participated in SNAP.[54] One in five of the nearly 20 million children who receive SNAP are living with a noncitizen adult.[55]

"[A] mass exodus of mixed-status households from the SNAP program" could lead to a considerable increase in the child poverty rate.[56] SNAP, like many public benefits, are often used to fill gaps for individuals with lower incomes, not as a stand-alone replacement for work.[57] Studies have confirmed that SNAP benefits reduce the likelihood of being food insecure by approximately 30 percent and the likelihood of being very food insecure by 20 percent.[58] In the absence of monthly benefits to help families get by, immigrant households will change—or have already changed—food-purchasing behaviors to less nutritious or fresh options. In the worst-case scenarios, children and their families will make the difficult decision to either go hungry or miss monthly payments like rent.

Local governments will feel the effects of reduced food benefit enrollment. The consequences of food insecurity are well documented. Food-insecure women are more likely to experience birth complications than food-secure women; food-insecure children are more likely to suffer from poor physical and mental health, including anemia, asthma, and depression.[59] Food insecurity can also result in lowered workplace productivity, and physical and mental health problems for adults and seniors.[60] Such impacts will lead to increased costs at safety-net hospitals, programmatic increases, and a decline in the economic well-being of Amici's communities. For example, Oakland funds several senior centers that offer free and low-cost

---

[54] *See* U.S. Dep't of Agriculture, *SNAP Data Tables* (last updated Aug. 2, 2019), https://perma.cc/9WRC-GSE5.

[55] Laird, *supra* note 13, at 2 (citing Sara Lauffer, U.S. Dep't of Agric., *Characteristics of Supplemental Nutrition Assistance Program Households: Fiscal Year 2016* (2017)).

[56] *Id.* at 6.

[57] *See* Bernstein, *supra* note 14, at 18-19.

[58] Caroline Ratcliffe & Signe-Mary McKernan, Urban Inst., *How Much Does SNAP Reduce Food Insecurity?* (Apr. 2010), https://perma.cc/PWB9-V5ZZ.

[59] New York City, Chicago, the U.S. Conference of Mayors, & Signatories, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 16 (Dec. 10, 2018), Docket No. USCIS-2010-0012-62861.

[60] *See id.*

meals.[61] If noncitizen seniors are not able to use SNAP, there is likely to be increased demand for meals at these locations, requiring redirection of City funding.

**D. The Rule Will Undermine Family Cohesion and Amici's Foster Care Systems.**

The Rule also cannot be reconciled with the interests of the abused and neglected children in the care of local governments. In the context of such children, there is broad agreement that Amici's goal should be keeping families together if at all possible.[62] This includes placing children with other family members when continued placement with parents is untenable.[63] In some cases, willingness to seek out all available resources for support of children is a key criterion in placement decisions—and a failure to obtain these resources can threaten parental rights. *See, e.g.*, Tex. Fam. Code § 263.307. These sources of support include the benefits targeted by the Rule. If made effective, the Final Rule will force parents to decline the services offered by the State and risk the termination of their parental rights. Moreover, in those cases where parental placement is impossible, immigrant family members will be even more reluctant to step forward and assume care for a child. Taking in a child is a significant resource commitment, and they are likely to feel that accepting support may threaten their immigration status.[64] In other words, the means through which Amici seek to preserve and reunify families will now lead to family destabilization and separation, and an increased burden on the foster-care system.

---

[61] City of Oakland, *Fiscal Year 2017-19 Adopted Policy Budget* D-7 (Oct. 2017), https://perma.cc/FQ6M-KFKF.

[62] U.S. Dep't of Health & Human Servs., Children's Bureau, *Determining the Best Interests of the Child* 2 (2016), https://perma.cc/Y2NE-B5QC (as of 2016, 28 states mandate consideration of family integrity as a guiding principle in determining the best interests of the child); *see also* Tex. Fam. Code § 264.151; Cal. Welf. & Inst. Code § 16000.

[63] *See, e.g.*, *id*.

[64] *See, e.g.*, Maria D. Badillo, Children's Rights Project at Public Counsel, Comment Letter on Proposed Rule *Inadmissibility on Public Charge Grounds* at 2 (Dec. 10, 2018), Docket No. USCIS-2010-0012-55481.

## CONCLUSION

The Rule irreparably undermines public health and will exacerbate this nation's housing crisis. It will result in higher poverty levels, reduced access to health care, and an increase in community health issues. Local governments, charged with protecting the health and welfare of their communities, will bear the costs. In a world of limited resources, they will do so at the cost of other local priorities and services. Implementation of the Rule must be enjoined nationwide.

Dated: September 9, 2019

Respectfully submitted,

By: __*/s/ Erin Bernstein*____________

BARBARA J. PARKER, SBN 069722
Oakland City Attorney
MARIA BEE, SBN 167716
ERIN BERNSTEIN, SBN 231539
MALIA MCPHERSON, SBN 313918
CAROLINE WILSON, SBN 322389
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Email: cwilson@oaklandcityattorney.org

Attorneys for Amicus Curiae
CITY OF OAKLAND

By: _*/s/ Danielle L. Goldstein*________

MICHAEL N. FEUER, SBN 111529
Los Angeles City Attorney
JAMES P. CLARK, SBN 64780
KATHLEEN A. KENEALY, SBN 212289
DANIELLE L. GOLDSTEIN, SBN 257486
Office of the Los Angeles City Attorney
200 North Spring Street, 14th Floor
Los Angeles, CA 90012
Telephone: (213) 978-1868
Email: danielle.goldstein@lacity.org

Attorneys for Amicus Curiae
CITY OF LOS ANGELES

[Additional Amici Listed on Following Page]

VINCE RYAN
County Attorney
ROBERT HAZELTINE-SHEDD
1019 Congress
Houston, Texas 77002
*Attorneys for the County of Harris, Texas*

ESTEBAN A. AGUILAR, JR.
City Attorney
One Civic Plaza NW
PO Box 2248
Albuquerque, NM 87103
*Attorney for the City of Albuquerque, New Mexico*

ANNE L. MORGAN
City Attorney
PO Box 1546
Austin, TX 78767-1546
*Attorney for City of Austin, Texas*

ANDRE M. DAVIS
City Solicitor
100 N. Holliday Street, Suite 101
Baltimore, MD 21202
*Attorney for the Mayor and City Council of Baltimore, Maryland*

MARK A. FLESSNER
Corporation Counsel
STEPHEN KANE
Deputy Corporation Counsel
REBECCA HIRSCH
Assistant Corporation Counsel
City of Chicago Department of Law
121 N. LaSalle Street, Room 600
Chicago, Illinois 60602
*Attorneys for the City of Chicago, Illinois*

CHRISTOPHER J. CASO
Interim City Attorney
City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
*Attorney for the City of Dallas, Texas*

LAWRENCE GARCIA
ELI SAVIT
2 Woodward Avenue
Detroit, MI 48226
*Attorneys for the City of Detroit, Michigan*

CRYSTAL BARNES
Acting City Solicitor
Holyoke Law Department
20 Korean Veterans Plaza, Rm. 204
Holyoke, MA 01040
*Attorney for the City of Holyoke, Massachusetts*

RONALD C. LEWIS
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section
COLLYN PEDDIE
Sr. Assistant City Attorney
900 Bagby, 4th Floor
Houston, Texas 77002
*Attorneys for the City of Houston, Texas*

SUSAN L. SEGAL
City Attorney
350 South Fifth Street, Room 210
Minneapolis, MN 55415
*Attorney for City of Minneapolis, Minnesota*

MARCEL S. PRATT
City Solicitor
One Parkway Building
1515 Arch Street
Philadelphia, PA 19102
*Attorney for the City of Philadelphia, Pennsylvania*

SUSANA ALCALA WOOD
City Attorney
915 I Street, Fourth Floor
Sacramento, CA. 95814
*Attorney for the City of Sacramento, California*

ERIN K. MCSHERRY
City Attorney
200 Lincoln Avenue
Santa Fe, New Mexico 87504
*Attorney for the City of Santa Fe, New Mexico*

LANE DILG
City Attorney
KIRSTEN GALLER
1685 Main Street, Room 310
Santa Monica, CA 90401
*Attorneys for the City of Santa Monica, California*

KRISTIN M. BRONSON
City Attorney
City and County of Denver
1437 Bannock Street, Room 353
Denver, CO 80202
*Attorney for the City and County of Denver, Colorado*

PETER S. HOLMES
City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for the City of Seattle, Washington*

BRIAN E. WASHINGTON
County Counsel
3501 Civic Center Drive, Suite 275
San Rafael, California 94903
*Attorney for the County of Marin, California*

FRANCIS X. WRIGHT, JR.
City Solicitor
City of Somerville
93 Highland Avenue
Somerville, MA 02143
*Attorney for the City of Somerville, Massachusetts*

CHARLES J. McKEE
County Counsel
WILLIAM M. LITT
Deputy County Counsel
ANNE K. BRERETON
Deputy County Counsel
MARINA S. PANTCHENKO
Deputy County Counsel
168 West Alisal Street, 3rd Floor
Salinas, CA 93901
*Attorneys for the County of Monterey, California*

STEPHANIE STEELE
Corporation Counsel
227 W. Jefferson Blvd. Suite 1200S
South Bend, IN 46601
*Attorney for the City of South Bend, Indiana*

JOHN C. BEIERS
County Counsel
DAVID A. SILBERMAN, Chief Deputy
ILANA PARMER MANDELBAUM, Deputy
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
*Attorneys for the County of San Mateo, California*

MICHAEL TUBBS
Mayor
425 N. El Dorado Street, 2nd Floor
Stockton, CA 95202
*Mayor for the City of Stockton, California*

DANA MCRAE
County Counsel
701 Ocean Street, Room 505
Santa Cruz, CA 95060
*Attorney for the County of Santa Cruz, California*

MICHAEL JENKINS
City Attorney
Best Best & Krieger LLP
1230 Rosecrans Avenue, Ste 110
Manhattan Beach, CA 90266
*Attorney for the City of West Hollywood, California*

HOWARD PHILLIP SCHNEIDERMAN
MONIQUE COHEN
Senior Deputy Prosecuting Attorneys
King County Prosecuting Attorney's Office
516 Third Avenue, W400
Seattle, WA 98104
*Attorney for the County of King, Washington*

DAVID A. ESCAMILLA
Travis County Attorney
ANNALYNN COX
Assistant County Attorney
P. O. Box 1748
Austin, Texas 78767
*Attorneys for the County of Travis, Texas*

JAMES A. JOHNSON, SBN 234962
AJAY SHAH, SBN 261741
2600 Wilshire Blvd., 3rd Floor
Los Angeles, CA 90057
Telephone: (213) 252-3131
Email: ajay.shah@hacla.org
*Attorneys for the Housing Authority of the City of Los Angeles, California*