JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
ALEXANDER K. HAAS, SBN 220932
Branch Director
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
  P.O. Box 883
  Washington, D.C. 20044
  Telephone: (202) 305-7664
  Facsimile: (202) 616-8470
  Email: Joshua.kolsky@usdoj.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCSICO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> *Defendants*. | Case No. 19-cv-4717-PJH <br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF INJUNCTION PENDING APPEAL** |
| STATE OF CALIFORNIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 19-cv-4975-PJH <br><br> Date: December 4, 2019 <br> Time: 9:00 am <br> Judge: Hon. Phyllis J. Hamilton |

*State of Cal., et al. v. DHS, et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 4, 2019, at 9:00 am or as soon thereafter as it may be heard before Chief Judge Phyllis J. Hamilton, Defendants will and do hereby move for an order staying the preliminary injunction in these cases pending the government's appeal to the Ninth Circuit Court of Appeals. This motion is based on this notice and the below Memorandum of Points and Authorities. The undersigned counsel conferred with Plaintiffs' counsel who stated that Plaintiffs oppose this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The federal government respectfully moves to stay pending appeal the Court's order granting preliminary injunction in San Francisco City and County, Santa Clara County, California, Oregon, the District of Columbia, Maine, and Pennsylvania. At the least, the Court should stay the injunction insofar as it applies beyond redressing the relevant injuries to Plaintiffs in these cases.

All the factors justifying a stay are met here. The government is likely to succeed on appeal both because the Plaintiffs lack standing and do not fall within the zone of interests of the relevant statute, and because the Department of Homeland Security ("DHS") rule—*Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41292 (Aug. 14, 2019) ("Rule")—is fully consistent with the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"). The government will also suffer irreparable harm in the absence of a stay. As things currently stand, DHS may be forced to grant lawful permanent residence ("LPR") status to aliens likely to become public charges at any time under the Rule and depend on public resources designated as public benefits for purposes of a public charge inadmissibility determination under the Rule. This state of affairs irreparably harms the government (and hence the public), who, as Congress has confirmed, has a "compelling … interest" in ensuring that "aliens be self-reliant." 8 U.S.C. § 1601(7).

Such an ongoing and significant intrusion into DHS's authority over who is entitled to an

*State of Cal., et al. v. DHS, et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

adjustment of their immigration status is particularly unwarranted here, where the only alleged injuries Plaintiffs would face from a stay are speculative downstream effects from the decisions of nonparties in response to the challenged Rule during the pendency of the litigation. Even if these purported injuries could give Plaintiffs standing (they cannot), they certainly would not justify inflicting such substantial harm on DHS, especially as it is likely to prevail on appeal.

This Court should therefore stay its injunction of the Rule pending the resolution of the government's appeal.

## ARGUMENT

In considering whether to grant a stay pending appeal, the Court must consider four factors: (1) the applicant's likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). All four factors favor a stay here.

### I.  THE GOVERNMENT IS LIKELY TO SUCCEED ON THE MERITS

The government respectfully submits that notwithstanding the Court's decision, it is likely to succeed on the merits of its appeal. As Defendants explained in their Oppositions to Plaintiffs' Motions for Preliminary Injunction and at oral argument, Plaintiffs are neither the appropriate parties to challenge the Rule nor have they presented tenable objections to it. *California v. DHS*, ECF No. 97 (CA PI Opp.) 5-32; *San Francisco v. USCIS*, ECF No. 98 (SF PI Opp.) 5-20.[1] The Court's conclusions to the contrary are unlikely to withstand appellate review.

**A.**   The Court concluded that Plaintiffs have suffered a cognizable injury—and have ripe claims—on the theory that the Rule will have various downstream effects on their fiscs based on the

---

[1] The Court considered a third related case simultaneously with the two cases identified herein, *La Clinica de la Raza v. Trump*, Case No. 19-cv-4980. However, the Court determined that the plaintiff organizations in that case had not demonstrated a likelihood of success or serious questions going to the merits of their APA causes of action and therefore did not consider their alleged harms in the scope of the injunction ordered. *California v. DHS*, Case No. 19-cv-4975, ECF No. 120 at 70-72, 91 n.24. Defendants do not intend to appeal that ruling and will not, therefore, address the allegations of the *La Clinica* case in this memorandum.

2
*State of Cal., et al. v. DHS, et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

independent decisions of nonparty aliens affected by the Rule. PI Order 79-83. But the Supreme Court has repeatedly "decline[d] to abandon [its] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," and that reluctance should apply with even more force where, as here, such a theory "relies on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 (2013); *see* CA PI Opp. 7-9; SF PI Opp. 6-8. And even if Plaintiffs were able to establish that they would incur these speculative costs, they have not and cannot show that these costs would outweigh the ones they would have incurred based on aliens who would have resided within their jurisdictions, and consumed their resources, but for the Rule. *Cf. Henderson v. Stalder*, 287 F.3d 374, 379-80 (5th Cir. 2002) (use of plaintiffs' tax dollars to produce a challenged license plate "is insufficient to confer standing" in part because motorists who choose the license plate pay additional fees that "offset the administrative costs" of the plates). Nor can Plaintiffs rely on "increased operational costs" related to "answering questions about the Rule, processing disenrollments, analyzing the impact of the rule on their services and undertaking community education and outreach." PI Order 81-83. Plaintiffs have identified no authority for the remarkable proposition that States and municipalities may challenge any federal policy so long as it would require them to make administrative updates. *See Crane v. Johnson*, 783 F.3d 244, 253 (5th Cir. 2015) (rejecting state officials' claim that they have standing to challenge DACA on the theory that policy would require that them to "alter their current processes to ensure" compliance) and agreeing that "a government employee responsible for carrying out an agency policy does not have standing to challenge that policy merely because of work responsibilities related to that policy"). For similar reasons, Plaintiffs claims are not ripe since they cannot allege that they have witnessed a material increase in State benefit enrollment, or that they will otherwise soon incur any other cost that is considered a cognizable Article III injury.

    In any event, even if Plaintiffs had Article III standing, they would fall outside the zone of interests governed by 8 U.S.C. § 1182(a)(4). *See* CA PI Opp. 11-12; SF PI Opp. 8-9. It is aliens improperly determined inadmissible, not States, who "fall within the zone of interests protected" by

3
*State of Cal., et al. v. DHS, et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

any limitations implicit in §§ 1182(a)(4)(A) and 1183, because they are the "reasonable—indeed, predictable—challengers" to DHS's inadmissibility decisions. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 227 (2012). And to the extent the public charge inadmissibility provision anticipated that it would implicate States' interests, those interests are the inverse of those Plaintiffs seek to protect here. The Rule is constructed to better ensure that aliens seeking to come to the United States temporarily or permanently will be self-sufficient.[2]

      **B.**      On the merits, this Court held that the "Rule's interpretation defining anyone who receives any quantity of benefits for 12 months (or fewer) out of a floating 36-month window as a public charge is not a permissible or reasonable construction of the statute" or that in the alternative Plaintiffs have raised serious questions as to whether the statute "unambiguously forecloses … DHS's expansive interpretation of the term." PI Order 46-48. However, as Defendants demonstrated, the Rule's interpretation falls squarely within the historical understanding of the term public charge, which was defined to generally include anyone that is "an obligation or liability." Stewart Rapalje et al., Dict. Of Am. And English Law (1888); *see also* CA PI Opp. 12-13. Indeed, no historical source uses the definition promoted by Plaintiffs of a person that is permanently, *see* CA PI Opp. 16, and "primarily dependent on the government," *see* SF PI Opp. 11. Here, the new standard effectuates the general "principle of United States immigration law" of "[s]elf-sufficiency," 8 U.S.C. § 1601—and the specific requirement that "[a]ny alien who … is likely at any time to become a public charge is inadmissible," 8 U.S.C. § 1182(a)(4)—by ensuring that aliens who seek admission or an adjustment of status have not received or will not receive public benefits for an extended period. That determination is well within Defendants' delegated interpretive authority.

      Congress delegated broad interpretive authority concerning the meaning of the statutory term "public charge" to the Executive Branch. That delegation permits the Executive Branch to adopt different interpretations of the same statutory language over time, so long as those interpretations are

---

[2] Grounds for Exclusion of Aliens under the Immigration and Nationality Act, House Committee on the Judiciary, 100th Congress, Doc. No. 95 at pg. 124-25 (Sept. 1988) (public charge ground of inadmissibility is intended to address issue of aliens "receiv[ing] public assistance").

4
*State of Cal., et al. v. DHS*, *et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

"based on a permissible construction of the statute." *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1075 (9th Cir. 2019) (quoting *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984)). Indeed, "[a]n initial agency interpretation is not instantly carved in stone. On the contrary, the agency considers varying interpretations and the wisdom of its policy on a continuing basis, for example, in response to changed factual circumstances, or a change in administrations." *National Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)) (cleaned up). As the Political Branches have long recognized, "[s]ince the elements constituting likelihood of becoming a public charge are varied," the Executive Branch should have considerable "discretion" in determining whether "an alien falls into that category." *Matter of Harutunian*, 14 I. & N. Dec. 583, 588 (BIA 1974) (quoting S. Rep. No. 81-1515 at 349 (1950)). DHS's Rule is therefore a permissible and reasonable interpretation of the public charge inadmissibility statute, and well within the authority delegated by Congress to the Executive Branch.

This Court further held that the Rule's interpretation of "public charge" is "at odds with persuasive Supreme Court" precedent in *Gegiow v. Uhl*, 239 U.S. 3 (1915). PI Order 47-48. But *Gegiow* has never been understood to have conclusively settled the meaning of "public charge" in subsequent immigration laws, let alone to have adopted a fixed definition of public charge that the Executive Branch must apply. Rather, the "single question" presented in *Gegiow* was "whether an alien can be declared likely to become a public charge on the ground that the labor market in the city of his immediate destination is overstocked" under "the act of February 20, 1907." 239 U.S. at 9-10. The Supreme Court answered no. As it observed, in the 1907 Act, "'[p]ersons likely to become a public charge' are mentioned between paupers and professional beggars, and along with idiots, persons dangerously diseased, persons certified by the examining surgeon to have a mental or physical defect of a nature to affect their ability to earn a living, convicted felons, prostitutes, and so forth." *Id.* at 10. Because these classes of enumerated aliens appeared "to be excluded on the ground of permanent personal objections accompanying them irrespective of local conditions," the Court concluded that

the term "public charge" is presumably "to be read as generically similar to the others mentioned before and after." *Id.*

As the government explained, Congress abrogated *Gegiow*'s holding in a 1917 immigration statute. *See* PI Opp. 16-17; *see also United States ex rel. Iorio v. Day*, 34 F.2d 920, 922 (2d Cir. 1929) (explaining that in the wake of the 1917 act, the public-charge statute "is certainly now intended to cover cases like *Gegion*"). But even if this Court continues to disagree on that score, Op. at 19-21, *Gegiow*—resting as it did on a specific application of *noscitur a sociis* to a list in a 1907 statute—would not control the meaning of "public charge" in Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), enacted eight decades later. For one thing, *Gegiow* did not hold that "public charge" within the 1907 statute "encompasses only persons who … would be substantially, if not entirely, dependent on government assistance on a long-term basis," Op. 19, but rather that an alien could not be classified as a public charge based solely "on the ground that the labor market in the city of his immediate destination is overstocked," *Gegiow*, 239 U.S. at 9-10; *see id.* at 8-9 ("the only ground for the order was the state of the labor market at Portland at that time"). And even if *Gegiow* could be read as broadly as this Court believes, there is no basis for importing its construction of the 1907 statute, which rested on specific application of *noscitur a sociis*, to the significantly different public-charge regime created by IIRIRA.

The Court also observed that Congress previously rejected proposed expansions of the statutory term "public charge" to include non-cash benefits. PI Order 45-46. But "[f]ailed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute," because "[a] bill can be proposed for any number of reasons, and it can be rejected for just as many others." *Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 170 (2001) (citation omitted). For that reason, "unsuccessful attempts at legislation are not the best of guides to legislative intent" as a general matter, and "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 332 n.24 (1981) (citations omitted).

6
*State of Cal., et al. v. DHS*, *et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

**C.** The Court further erred in holding that the Rule is arbitrary and capricious because DHS failed to consider and respond to predictable costs to states and municipalities, PI Order 57-59, and failed to explain the Rule's departure from the previous guidance's concern with health effects created by decreased enrollment in public benefits, *id.* 61-62. The Court may not disregard DHS's "explanations, reasoning, and predictions" simply because Plaintiffs "disagree[] with the policy conclusions that flowed therefrom." *California by and through Becerra v. Azar*, 927 F.3d 1068, 1079 (9th Cir.), *reh'g en banc granted*, 927 F.3d 1045 (9th Cir. 2019).

First, an agency's obligation to respond to comments on a proposed rulemaking is "not 'particularly demanding.'" *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 441-42 (D.C. Cir. 2012). "[T]he agency's response to public comments need only 'enable [courts] to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did.'" *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). Contrary to the Court's finding, DHS considered comments about potential harms to state and local governments from the disenrollment effects of the Rule, and in fact modified the Rule in response. DHS devoted several pages of the Rule to describing and responding to comments that the Rule would lead to disenrollment from public benefits and increase costs for states and localities. Rule at 41310-14, 41469-70. DHS explained why the Rule was justified, notwithstanding the potential disenrollment impact. The "rule's overriding consideration, *i.e.*, the Government's interest . . . is a sufficient basis to move forward." *Id.* at 41312 (explaining that the relevant Government interest are those set forth in PRWORA and codified at 8 U.S.C. § 1601). DHS has the "authority to take past, current, and likely future receipt of public benefits into account, even where it may ultimately result in discouraging aliens from receiving public benefits." *Id.* at 41312. Also, the extent to which disenrollment might impact state and local governments is unknown because data limitations make it difficult to predict the disenrollment impact. *Id.* at 41313. Moreover, DHS made a number of changes to the Rule to mitigate some of the concerns raised regarding disenrollment impacts, such as excluding certain benefits from the scope of the Rule. *Id.* at 41313-14. This process— full consideration of the issues and the evidence on both sides, the adoption of changes in response,

7
*State of Cal., et al. v. DHS*, *et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

and an articulated statement of the reasons for the agency's ultimate decision—was neither arbitrary nor capricious.

Second, the Court erred in holding that DHS was required to do more to explain its changes from the 1999 Interim Guidance. All that DHS was required to do to permissibly change course was to acknowledge that the Rule does change course, provide a reasoned explanation for the change, and explain how it believes the new interpretation is reasonable. *See generally FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). The Rule did all of these things. *See, e.g.*, Rule at 41308, 41319 (explaining that the prior guidance "failed to offer meaningful guidance for purposes of considering the mandatory factors and was therefore ineffective"). Having addressed these issues, DHS is entitled to full deference to its changed interpretations, consistent with its obligation to "consider varying interpretations and the wisdom of its policy on a continuing basis." *Chevron*, 467 U.S. at 863-64 (recognizing agencies receive deference to a "changed . . . interpretation of [a] term").

## II.     THE REMAINING FACTORS FAVOR A STAY

Both the federal government and the public will be irreparably harmed if the injunction is not stayed. The federal government sustains irreparable injury whenever it "is enjoined by a court from effectuating statutes enacted by representatives of its people," *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers). That injury is particularly acute here because the Court's injunction will require DHS, on a nationwide basis, to grant lawful permanent resident status to aliens who are likely at any time to become public charges under the Rule and who depend on public resources designated as public benefits for purposes of a public charge inadmissibility determination under the Rule to meet their needs. See 8 U.S.C. § 1601 ("principle of United States immigration law" of "[s]elf-sufficiency"); Id. § 1601(2)(A) ("[T]he immigration policy of the United States [is] that aliens within the Nation's borders not depend on public resources to meet their needs."). DHS estimates that roughly 382,264 people apply for an adjustment of status and are subject to a public charge inquiry each year. *See* Declaration of Daniel Renaud, Exh. 1, ¶ 4; Rule at 41497, 41464. If the Rule remains enjoined, some subset of this population will receive an adjustment of status that otherwise would not under the Rule's

8
*State of Cal., et al. v. DHS*, *et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

more thorough review process. Renaud Decl. ¶ 4. DHS currently has no practical means of revisiting these determinations made under the prior guidance, and subjecting them to the Rule, if the injunction against the Rule is ultimately vacated. *Id.* And because those persons, by definition, are likely to receive government benefits in the future, the injunctions will inevitably result in the additional expenditure of government resources, precisely the harm that Congress and the rule seek to prevent. Moreover, every day the effective date of the Rule remains stayed, the Rule's future effectiveness is reduced: any public benefits received by aliens submitting status adjustment applications before the Rule takes effect will be counted only if they would have been covered by the 1999 Interim Field Guidance, Rule 41321, which means that even if the government ultimately prevails, the Rule's future operation will be irreparably undermined.

The injunction also imposes significant administrative burdens on Defendants and needless uncertainty on the aliens Plaintiffs claim to support. For instance, USCIS has devoted significant time to preparing implementation of the Rule, including preparing training for the relevant officers at its National Benefit Center as well as across 88 Field Offices. *Id.* ¶ 5. The rollout of such widespread training cannot happen overnight, and USCIS will be forced to start much of the process over again if and when the injunction is vacated. *Id.* USCIS also hired contractors to enter the significant amount of data required on its new forms associated with the Rule. *Id.* ¶ 6. If the injunction is not stayed in the near future, contractors are likely to seek other employment, which will only further impede USCIS's ability to implement the Rule if and when the injunction is vacated. *Id.*

On the other side of the ledger, Plaintiffs will not suffer any irreparable injury. Their alleged harms stemming from possible downstream effects of the Rule are insufficient to create standing, *see supra* Pt. I.A, much less satisfy the more exacting requirements to establish irreparable injury, *see* CA PI Opp. 32-34; SF PI Opp. 20-23. And even if the Court accepts that the Rule will *eventually* cause Plaintiffs irreparable injury, they have provided no evidence that the Rule will irreparably drain their fiscs *during the pendency of an appeal. See* CA PI Opp. 34; SF PI Opp. 22-23. And even then, if it were clear that a stay would somehow irreparably harm these States, any such injuries would be substantially

9
*State of Cal., et al. v. DHS, et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal

outweighed by the harms to the government (and the public) associated with the threat of mandating the ongoing admission of aliens likely to become public charges under the Rule.

## CONCLUSION

The government respectfully requests that the Court stay its preliminary injunction pending final resolution of the government's appeal.

Dated: October 25, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ *Joshua M. Kolsky*
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
1100 L Street, N.W., Rm. 12002
Washington, DC 20001
Phone: (202) 305-7664
Fax: (202) 616-8470
Email: joshua.kolsky@usdoj.gov

*Attorneys for Defendants*

10

*State of Cal., et al. v. DHS*, *et al.*, Case No. 19-cv-4975-PJH
*City and County of San Fr., et al. v. USCIS, et a.*, No. 19-4975-PJH
Mem. in Supp. of Defs' Mot. for Stay Pending Appeal